656 So.2d 689 (1995)
Anthony JEANSONNE
v.
Elizabeth Locker DETILLIER, State Farm Insurance Casualty Insurance Company and Lloyd Johnson, et al.
No. 94-CA-903.
Court of Appeal of Louisiana, Fifth Circuit.
May 10, 1995.
*690 Charles Spencer Long, Donaldsonville, Charles Wm. Roberts, Baton Rouge, David C. Vidrine, Baton Rouge, for appellant Anthony Jeansonne.
René E. Thorne, Metairie, for appellee State Farm Fire & Cas. Co.
Before BOWES, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Anthony Jeansonne, appeals from two district court judgments in favor of defendants, Elizabeth Locker Detillier and her homeowner's insurance carrier, State Farm Fire and Casualty Insurance Company (State Farm), which reduced the damage award from $80,000 to $50,000 and held that the State Farm policy did not cover the damages. For the reasons which follow, we affirm both judgments.
This action arose as a result of the filing of a false felony complaint of forcible rape by Detillier against Jeansonne. On July 18, 1988, Detillier met Jeansonne at a lounge. When the lounge closed, Detillier invited Jeansonne back to her residence where they engaged in consensual sexual relations. Immediately thereafter, Detillier asked Jeansonne to leave and he complied. Within minutes, Detillier telephoned her estranged boyfriend and reported to him that she had been raped. She messed up her bedroom, called the police and reported the rape. Detillier gave a statement to the police, implicating Jeansonne in the rape. Then, she accompanied the police to the hospital where she underwent a rape kit examination. The following day, July 19, 1988, Detillier went to work around noon. The police went to her work and showed her photographs from which she identified Jeansonne as the rapist. On the morning of July 19, 1988, Jeansonne was arrested on the charge of forcible rape. On July 20, 1988, after learning of Jeansonne's arrest, Detillier went to the sheriff's office and gave a voluntary statement, acknowledging that she had falsely accused Jeansonne of rape. Newspaper articles, chronicling the arrest of Jeansonne for forcible rape, had already been published. The newspaper retracted the story the following day.
Jeansonne sued Detillier and her homeowner's insurer to recover damages that he suffered as a result of her false complaint that caused his arrest. He alleged that he suffered great mental anguish, distress, humiliation and embarrassment.
A jury trial was held on January 5 and 6, 1994. The jury returned a verdict in favor of Jeansonne, casting Detillier 100% at fault and awarding damages of $80,000. On January 6, 1994, a separate hearing was held, before the trial judge alone, on the question of whether Detillier's homeowner's policy provided coverage for Jeansonne's damages. *691 On February 17, 1994, the trial court rendered judgment in favor of State Farm, dismissing the insurer from the case upon finding that the intentional act policy exclusion applied to the facts presented herein and, thus, there was no insurance coverage. The $80,000 jury verdict was also made part of that judgment. Thereafter, Detillier filed a Motion for Judgment Notwithstanding the Verdict, or in the Alternative, a Motion for Remittitur which was heard on March 3, 1994 and taken under advisement by the trial judge. On March 24, 1994, the trial judge granted the remittitur and reduced the previous judgment from $80,000 to $50,000. It is from these two judgments, dated February 17, 1994 and March 24, 1994, that Jeansonne now appeals.
On appeal, Jeansonne's main argument concerns whether the trial court erred in finding that the homeowner's policy did not provide coverage for his damages. Jeansonne breaks his argument into three sub-arguments: (1) whether the facts present an "accident" or "occurrence" within the meaning of the policy; (2) whether he suffered "bodily injury" or "property damage" as defined by the policy; and (3) whether coverage for the sustained injuries is excluded by specific policy provisions, namely, the intentional injury or willful and malicious act section of the policy.
The State Farm homeowner's policy at issue herein provides that coverage to others for personal liability and for medical payments does not apply to bodily injury or property damage: "(1) which is either expected or intended by an insured; or (2) which is the result of willful and malicious acts of an insured."
The Supreme Court, in Breland v. Schilling, 550 So.2d 609 (La.1989), considered an exclusion clause in an insurance policy similar to the first clause in this policy. In Breland, the court noted that such a clause only excluded coverage for bodily injury that was intended by the insured, and did not exclude coverage for bodily injury that was caused by an intentional act of the insured where the injury itself was unintended. The court held that the exclusion clause "does not bar coverage for unintentionally grievous injuries which, though precipitated by the insured, were never intended by him."
In the instant case Detillier consistently stated that she did not intend any harm to come to Jeansonne. Rather, her only interest, albeit misguided, was to get attention and sympathy from her estranged boyfriend. She stated that originally, she did not think the police would ever find Jeansonne because she gave them only a nickname and a very limited description. The evidence and testimony indicated that Detillier was consistent at all times that she intended no harm to Jeansonne.
Thus, absent a finding that the insured, Detillier, intended the injuries that Jeansonne suffered, following Breland, we find that the first exclusion clause in the State Farm policy does not operate to exclude coverage in this case.
This does not end our inquiry, however, because unlike the Breland case, the insurance policy in this case contains a second exclusion clause which, unlike the first which relates to intended injuries, relates to intentional acts by the insured. The second clause excludes coverage for injury "which is the result of willful and malicious acts of the insured."
While there are not many cases interpreting such an exclusion clause, the Third Circuit had occasion to consider an identical clause as that herein from a State Farm policy in the case of Keathley v. State Farm Fire & Cas. Ins., 594 So.2d 963 (La.App. 3rd Cir.1992). In Keathley, the plaintiff had been struck in the face by defendant causing the loss of several of plaintiff's teeth and gum damage. The court in Keathley ruled, as we did above, that clause (1), the intentional injury clause of the policy, did not exclude plaintiff's injuries from coverage since they were not intended. Then, in considering the second exclusion clause in the policy, the court concluded that the act of striking plaintiff in the mouth, although the resulting injuries were not intended, was a "willful and malicious" act covered in the policy and, accordingly, coverage for that act was excluded. In reaching this conclusion the Keathley court looked to the general and common *692 meaning of the words "willful" and "malicious." In defining "willful" the court found:
The term willful has been defined, and this term has been held to apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.
"The usual meaning assigned to this term is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." See Prosser, Law of Torts, Section 34, at pages 187-189 (3d Ed.1964). Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907 (La.App. 3d Cir.1975); Prosser v. Crawford, 383 So.2d 1363 (La. App. 3d Cir.1980).
The court went on to address the meaning of the term "malicious," stating:
The term malicious, also used in the second part of the exclusionary clause, had not been defined or used in any cases like the term "willful". In order to determine if defendant's conduct falls under this second prong, we must use the common meaning of the word "malicious". The general meaning of this term as found in Black's Law Dictionary 5th ed. is as follows:
"Characterized by, or involving, malice; having, or done with, wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse. See also Malice; Willful.
In the instant case, the trial court made the following findings with which we are in accord.
At trial Ms. Detillier testified that she did knowingly falsely accuse Mr. Jeansonne of rape. She admitted rearranging furniture in her home to make the residence appear as if a physical struggle had occurred and then later reported the alleged rape to her boyfriend and to the St. John Sheriff's office. Ms. Detillier continued to publish the false allegation against Mr. Jeansonne and the day after the alleged rape she picked Mr. Jeansonne out of a photographic lineup. As a result of Ms. Detillier's actions Mr. Jeansonne was arrested for the crime of forcible rape.
Ms. Detillier argues that the State Farm Insurance policy is applicable because coverage is not excluded by the willful and malicious acts exclusion, arguing that she did not intend to hurt Mr. Jeansonne. Ms. Detillier testified at trial that she did not intend for Mr. Jeansonne to be arrested rather she intended to gain the attentions of her current boyfriend.
The Court finds that her conduct showed indifference to the consequences that may have flown from her false accusations and that she acted wrongfully and without cause. This Court finds that as a matter of fact and law that Ms. Detillier's actions were willful and malicious and that by her actions she damaged and injured Mr. Jeansonne. Her failure to anticipate the extent of his damages is not sufficient as it is immaterial whether the defendant intended the actual resulting injuries.
After reviewing the evidence and applicable jurisprudence in this case, we agree with both the Keathley case and the trial judge in this case that Detillier acted with total indifference to the consequences of her actions. She had knowledge that some type of harm would follow, especially when she picked Jeansonne out of a lineup. Her actions were intentional, wrongful, without just cause or excuse and, in fact, were illegal. While she may not have fully appreciated the consequences that would follow from her actions, that does not make her actions any less willful or malicious. Under this State Farm policy, coverage is not provided for damages which result from willful and malicious acts, regardless of whether the insured intended the resulting damages. Therefore, we find that the trial court judgment, dismissing State Farm from Jeansonne's suit upon finding that State Farm does not provide coverage for his injuries sustained as a result *693 of the insured's false police report of rape, is correct.
In Jeansonne's remaining argument on appeal, he contends that the trial court erred in granting the remittitur and reducing the damage award from the $80,000 jury verdict to $50,000. First, Jeansonne argues that remittitur is not allowed where the jury returns a lump sum award. We disagree.
La.C.C.P. art. 1814, on remittitur, provides as follows:
If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.
The cases relied on by Jeansonne in support of his position that the trial court erred in granting the remittitur are distinguishable from the instant case.[1] In those cases, the court was addressing the question of whether an additur was appropriate and there were questions of liability and causation involved, making it impossible to separate quantum from the other issues in the case. In the instant case, we are considering a remittitur, liability is clear and the only damages are for mental and emotional suffering. Thus, quantum is separable from other issues in the case and remittitur should not be prohibited.
In reducing the damage award, the trial court found that the $80,000 award was out of line with similar cases. The court cited the case of Taylor v. State, 617 So.2d 1198 (La.App. 3rd Cir.1993) as "the highest appellate case with facts somewhat similar to the case at Bar." In Taylor, the plaintiff had been improperly arrested for fraudulently obtaining narcotic drugs. She had suffered mental anguish, emotional distress and embarrassment. The court in Taylor reduced a $500,000 award to $40,000. In relying on the Taylor case, the trial court herein took note that the charged offense in this case, forcible rape, was more grievous, attached a greater negative stigma and only reduced the award to $50,000.
In reviewing the record, we found that Jeansonne spent less than ten hours in jail and, although an article was published in the paper about the incident, a retraction was published the following day. Jeansonne testified that he was harassed at work because of the incident and he received harassing phone calls. He did not consult a psychiatrist, but did consult a doctor about sleep problems. We note that there was some question as to whether Jeansonne's emotional and sleep problems were solely related to this incident or whether a contributing factor was a later work accident that he suffered. The cases that he relies on in support of the $80,000 award do not present sufficiently similar factual situations to make them truly comparable.[2] Therefore, based on the record as a whole, we agree with the trial court finding that the $80,000 jury award was excessive and the judgment reducing it to $50,000, the highest amount supportable by the record and prior jurisprudence.
Accordingly, for the reasons stated above, the lower court judgments, finding that State Farm did not provide coverage for the damages that Jeansonne sustained and reducing the damages to $50,000, are affirmed.
AFFIRMED.
NOTES
[1] Plaintiff relies on the following cases in support of his argument that remittitur was not proper. Davis v. State Farm Mutual Automobile Insurance Company, 590 So.2d 714 (La.App. 3rd Cir. 1991); Ellis v. Allstate Insurance Company, 453 So.2d 1209 (La.App. 5th Cir.1984).
[2] Plaintiff relies on the cases McHale v. Lake Charles American Press, 390 So.2d 556 (La.App. 3rd Cir.1980) and Health Unlimited v. Loyola University, 434 So.2d 133 (La.App. 5th Cir.1983).