DREW, J.
|! Quantum is the sole issue in this appeal by defendant, Gary Luse, who complains that the trial court erred in granting a combined $225,000 judgment, apportioned $150,000 in favor of Jacqueline Dubuy, and $75,000 in favor of her husband and three minor children. Finding that the amounts awarded are unreasonably high, we amend the judgment and affirm as amended.
On at least three occasions from April to June of 2006, plaintiffs vehicle was vandalized, resulting in flat tires caused by nails.
On July 8, 2006, as Jacqueline Dubuy, a respiratory therapist, was leaving work at Glenwood Regional Medical Center, she noticed that her car had two flat tires, both caused by nails. A few days later, she saw the defendant, Gary Luse, also employed at the hospital, under her car. She contacted the police.
On July 22, 2006, Luse was videotaped nailing screws into her tires. He was arrested and charged with three counts of aggravated criminal damage to property and one count of stalking. He pled guilty to one count of misdemeanor stalking and three misdemeanor counts of simple criminal damage to property.
Dubuy and her husband, individually and on behalf of their minor children, sued Luse and asserted that he was liable for damages to them caused by assault, battery, trespass to chattel, and intentional infliction of emotional distress.
A preliminary default was entered and confirmed two months later, at a proceeding which was not recorded. The trial court initially awarded |2$300,000 to Dubuy and $200,000 to the rest of the family. Luse filed a motion for new trial, which the court granted only as to the issue of quantum.
Following a new trial on quantum, which was recorded, the court awarded $150,000 to Dubuy and $75,000 to her husband, Dave, and their children. Luse filed another motion for new trial, which the court denied. Luse now appeals.

Procedural Chronology

July 2, 2007 Suit filed.
November 14, 2007 Default confirmed, in an unrecorded proceeding, with a combined judgment of $500,000 rendered.
November 20, 2007 Judgment signed.
April 30, 2008 Defendant granted new trial as to quantum only.
June 30, 2008 Bench trial; case taken under advisement.
July 28, 2008 Ruling and Judgment rendered for a total amount of $225,000 ($150,000 to Dubuy and $75,000 to her husband and their children.
October 14, 2008 Hearing on second motion for new trial.
*427 November 14, 2008 Denial of second motion for new trial.

Reasons for Judgment

The trial court eloquently stated its reasoning in its Ruling and Judgment, reproduced here verbatim:
With liability being stipulated to, the only issue for this Court to decide is quantum. Because the actions of Defendant were criminal, egregious, diabolically mysterious, and (potentially) deadly, the impact of said actions was Isdimensionally tortuous and damaging to Plaintiff and Plaintiffs family. For same, Defendant is bound to repair the damages (see Civ.Code. Art. 2315). Based on the testimony offered and the effect Defendant’s conduct had on Plaintiff and Plaintiffs family, this Court finds Plaintiff experienced (1) withdrawal (2) feelings like a pet that was beaten down (3) feelings of distrust (lp) failure to recover (5) changed demeanor (6) rendered more quiet, reserved (7) work desire adversely affected (8) rendered not the same person as before (9) people no longer want to be around Plaintiff (10) no longer outgoing (11) doubted by husband (12) arguments in marriage (13) fears of going to work (lip) the occurrence of this during pregnancy (15) adverse effect on relationship with children (16) feelings akin to a “death” in the family (17) experiencing a “rough three years” (18) they go “nowhere” anymore (19) failure “to do things anymore” (20) feelings of paranoia (21) adverse effect on sleep-up and down (22) lingering “trust” issues (23) marital relationship breakdown (24) emotional outburst problems and (25) a clear change in pre-incident and post incident marriage environment. Based on the testimony offered and the effect Defendant’s conduct had on Plaintiff and Plaintiffs family, and based on the particular “effects” above, this Court finds and concludes that damages are awarded to Plaintiff as follows: $150,000 to Jacqueline Dubuy and $75,000 to Dave Dubuy and the remaining Plaintiffs (i.e. children — see La. Civ.Code Art. 2324.1).

Witnesses at Trial

Defendant validly pointed out in brief that this record lacks testimony from mental health experts. While unusual, this does not preclude an award for the damages suffered here.
Five lay witnesses testified: the two plaintiffs, her mother, her supervisor, and her friend/coworker. Their testimony was compelling, and there is no doubt that these plaintiffs have been cruelly damaged.
• Richard Sneed, a respiratory therapist with 18 years of experience as of the date of trial, supervised Mrs. Du-buy for two or three years before the subject acts of vandalism, and a like period subsequent to the crimes. He described her as happy before the vandalism and “beat down” since then.
14* Malva Rutledge, mother of Mrs. Du-buy, also contrasted her daughter’s positive demeanor before the vandalism, and her negative attitude after the incidents.
• Stephanie Harris, another respiratory therapist and social friend of Mrs. Du-buy, described plaintiff as friendly, knowledgeable and professional before these incidents. Afterwards, she considered plaintiff as quieter, more reserved, not engaged in conversations, aloof and less inclined to work — “just not the same old Jackie.”
• David Dubuy, husband of plaintiff and plaintiff in his own right, described his wife before the incidents as happy, outgoing, interested in going and do *428 ing (Bible school, learning to play golf, working in the yard, etc.). After this all came up, he describes his wife as withdrawn, argumentative, and afraid to go to work. He testified that these incidents had racked him with issues such as doubt and trust. He described his wife as changed, almost like a death.
• Jackie Dubuy, lead plaintiff, has now developed her own trust issues with her husband. She admits becoming paranoid, having no desire to go anywhere. She is sleep-challenged, and confirmed that she has, indeed, become argumentative and quick to anger. She testified that her marriage was no better at trial than the level to which it had sunk immediately after the incidents and resultant rumors.
DISCUSSION
Luse, a coworker of plaintiff at the time of his nefarious actions, terrorized her for over three months from late spring until midsummer of 2006, by driving nails and screws into the tires of her car. He repeated these actions several times, until being videotaped and subsequently arrested.
Luse caused less than $1,000 worth of damages to Dubuy’s tires. There are no other items of special damages for us to review. Dubuy and her family clearly suffered greatly, and they undoubtedly still suffer, on account of the pathetic and cruel acts of the defendant.
hOur law on reviewing quantum awards is well settled.[1]
We recognize that the discretion vested in the trier of fact is vast, and we understand our limited role in reviewing general damage awards is to raise or lower a trial court award to the lowest or highest amount (respectively) that could have been reached by a reasonable trier of fact. Notwithstanding the above precepts, we think that the trial court overshot the mark to such an extent that we must do some whittling on what we find to be abusively high awards.
*429 In Steed v. St. Paul’s United Methodist Church, 31,521 (La.App.2d Cir.2/24/99), 728 So.2d 931, writ denied, 1999-0877 (La.5/7/99), 740 So.2d 1290, the minister was awarded a lump sum award of $90,000 which included both special and general damages for defamation (allegations of | nsexual harassment). The minister was exonerated of the charges but was transferred to another part of the state and his salary was reduced by $18,000 annually. The record showed the minister suffered a loss of reputation, humiliation, embarrassment, and loss of income. In reviewing the quantum, there is no mention of medical or psychological treatment in the opinion, which notes that the minister refused counseling, vehemently maintained his innocence and was vindicated by the investigations. In the cited case, where the special damage was the loss of income, the general damages were apparently $62,000 in circumstances where the minister was damaged to the extent that he was required to change jobs and lose income.
In Jeansonne v. Detillier, 94-903 (La.App. 5th Cir.5/10/95), 656 So.2d 689, writ denied, 95-1410 (La.9/22/95), 660 So.2d 471, a man falsely accused of rape was awarded $50,000. The woman staged the scene and made the accusation to the police before recanting the next day. The man spent 10 hours in jail and the allegations were published in the newspaper, which ran a retraction the next day. While he did not consult a psychiatrist for his damages, the man was embarrassed at work and received harassing phone calls following the incident.
In Lowrey v. Pettit, 31,881 (La.App.2d Cir.5/7/99), 737 So.2d 213, the plaintiff presented no medical records establishing any treatment and the duration of her symptoms. Plaintiff testified she was emotionally upset and had difficulty eating and sleeping due to anxiety. Evidence did not show her emotional distress continued after she quit her job. The plaintiff established she had been sexually harassed at work by defendant, whose 17actions created a hostile working environment. Plaintiff needed the job because she was the single mother of three and going through a divorce. Evidence established that the plaintiff was subjected to continuing unnecessary touching and unwelcome offensive contact including continuing batteries. The appellate court reduced the $30,000 general damages award to $15,000.
CONCLUSION
We agree with the trial court’s findings that Luse’s actions had a profound and negative effect on Dubuy and her family. We find, however, that an award of $50,000 for Dubuy is the largest amount a reasonable trier of fact could have awarded for general damages. We further find that $25,000 is the most a reasonable trier of fact could award to Mr. Dubuy and the children. Accordingly, we amend the judgment in these respects, and, as amended, affirm the judgment.
DECREE
With costs of this appeal apportioned 50% to the plaintiffs-appellees and 50% to Luse, the judgment is AMENDED, AND, AS AMENDED, AFFIRMED.

. "[T]he standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award.” Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), U.S. cert. denied.
In Bouquet v. Wal-Mart Stores, Inc., 2008-0309 (La.4/4/08), 979 So.2d 456, the supreme court recently discussed review of general damages awards. Inherently speculative in nature, general damages cannot be fixed with mathematical certainty. The standard of review applicable to a general damages award is the abuse of discretion .standard. The trier of fact is afforded vast discretion in assessing the facts and fixing general damages because it is in the best position to evaluate witness credibility and see the evidence firsthand. An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. The role of an appellate court in reviewing a general damages award is not to decide what is an appropriate award but rather to review the exercise of discretion by the trier of fact.
In determining whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. Only if the factual review reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. The test in the factual review is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Prior awards, however, are only a guide. Bouquet, supra.
An appellate court can increase or decrease the damage award only when the damage award is, in either direction, beyond that which a reasonable trier of fact could have assessed for the effects of the particular injury to a particular person under particular circumstances. See Fox v. Texaco, Inc., 97-2126 (La.App. 1st Cir. 12/26/98), 722 So.2d 1064.